Nott, J.,
delivered the opinion of the court:
When the United States entered upon the land of the claimant and cut the wood for which he is now seeking compensation, he was engaged in waging war against them as a soldier under a government de facto, which was then a hostile power. At the time when the United States again entered upon his land and carried away the wood, his condition was that of a prisoner of war-upon parole. The place where the wood was cut was in law and in fact “ enemy’s territory.” At the time when it was taken, civil government had not been re-established, the authority of the United States had not been in any formal or obligatory manner recognized, and the army which had waged the war for the recovery of the country still held and occupied *328 it by force of arms. Moreover, the wood had been cut by this army, and was taken for its use.
These facts seem to bring the claim within the very letter of that provision of the Bowman Act (§ 4) which declares that in the case of a claim for stores or supplies taken by the military forces of the United States for their use “ during tbe late war for the suppression of the rebellion, the petition shall aver that the person from whom such supplies or stores were taken did not .give any aid or comfort to said rebellion, and the fact of such loyalty shall be a jurisdictional fact.” Nevertheless, the claimant contends that as the taking and using were subsequent to the surrender of the last Confederate army, /the supplies were taken after the war, and that his loyalty is nota jurisdictional fact.
The claimant apparently has regarded the term “ war ” in the-Bowman Act as synonymous with active hostilities, and his counsel on the argument while conceding that the Supreme Court held in Anderson’s Case (9 Wall. R., 56) that the rebellion did not terminate until the Proclamation, August 20, 1866 (14 Stat. L., 814), nevertheless maintained that it was the object of the court to ascertain when the rebellion terminated within the intent of the Abandoned and Captured Property Act (12 Stat. L., p. 820) and the avowed purpose of the court to act liberally by adopting the latest possible day. This distinction is well and correctly taken. But in the subsequent case of the Protector (12 Wall. R., 700) the Abandoned or Captured Property Act was not involved, and the question was not one of rebellion, but of war, and as distinctly one of' war as if there had been an international war with a foreign power. The decision was indeed an application of the law of nations to the war of the rebellion; and the general principle applicable to the case-being that the right to enforce payment of a debt between enemies revives when war terminates, the question before the court was, when did the war of the rebellion end f
The Supreme Court answered that question by holding that the proclamation of the President must be accepted as the authority which fixes the beginning and the ending of the “ war.” “We must,” says the court, “ take the dates of these proclamations as ascertaining the commencement and the close of the war.” “ We find that the war began in Alabama on the-19th April, 1861, and ended on the 2d of April, 1866.”
*329 The proclamation referred to by the Supreme Court of the 2d April, 1866 (14 Stat. L., p. 811), refers to all of the States east of the Mississippi and includes the State of Yirginia. Accordingly it must now be held that this claim is for supplies taken by the military forces of the United States during the “ war for the suppression of the rebellion,” and that the loyalty of the claimant is consequently a jurisdictional fact.
The order of the court is that the claim be dismissed for want of jurisdiction.